UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NOCO COMPANY, | Case No. 1:21-cv-00604 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| CF GROUP SZKMS CO., LTD, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Noco Company brought this action against Defendant CF Group SZKMS Co., Ltd., a Chinese company, for patent infringement, trademark infringement and unfair competition under federal law, and deceptive trade practices under Ohio law. Plaintiff seeks leave to serve Defendant by alternative means. For the reasons that follow, the Court **DENIES** Plaintiff's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Noco designs and manufacturers premium consumer battery chargers, jump starters, and other portable power devices used in the automotive and marine industries. (ECF No. 1, ¶ 8, PageID #3.) Noco holds patents relating to an improved portable jump starter. (*Id.*, ¶¶ 15–16, 26–27, PageID #4, 7.) CF Group SZKMS is a business headquartered in China that operates under the name VAVOFO. (*Id.*, ¶¶ 3, 4, PageID #2.) On March 16, 2021, Plaintiff filed this lawsuit. (*Id.*) Plaintiff alleges that Defendant infringes on Plaintiff's intellectual property rights by selling jump starters containing Plaintiff's patented safety features. (*Id.*, ¶ 18, 29, PageID #6, 8.)

1

Plaintiff brings claims against Defendant for patent infringement in violation of federal patent laws; trademark infringement and unfair competition; and violation of Ohio's Deceptive Trade Practices Act. (*Id.*, ¶¶ 44–73, PageID #12–15.)

In connection with this action, Plaintiff, through counsel, attempted to ascertain contact information for Defendant by conducting a "comprehensive search" of Amazon.com, the United States Patent and Trademark Office, Bloomberg.com, VAVOFO's website, Google.com, and Dun & Bradstreet. ([ECF No. 7-1](ECF No. 7-1), ¶ 2, PageID #97.) These efforts yielded a total of three physical addresses for Defendant: (1) an address in China listed for VAVOFO on a USPTO trademark application; (2) a different address in China listed on one of VAVOFO's patents; and (3) the address listed on VAVOFO's website for its location in Nanshan, China. (*Id.*, ¶¶ 4–6, PageID #97–98.) Of the waiver packages Plaintiff mailed to these addresses, only the waiver package to the Nanshan address was successfully delivered. (*Id.*) Plaintiff also emailed a waiver package to VAVOFO's customer support email address. (*Id.*, ¶ 8, PageID #99.) The email was successfully relayed and did not "bounce back." (*Id.*)

Next, Plaintiff emailed two attorneys with ties to Defendant: (1) Hao Ni, the attorney of record for three VAVOFO trademarks registered in 2019, and (2) Li Yang, the attorney of record for a VAVOFO trademark registered in 2021. (*Id.*, ¶ 9, 11, 14, PageID #99–100.) As of October 18, 2021, Mr. Yang is still listed as the attorney of record for the VAVOFO trademark. (*Id.*, ¶ 15, PageID #100.) Both Mr. Ni and Mr. Yang denied representing Defendant in this matter. (*Id.*, ¶¶ 10, 12, PageID #99–100.)

Defendant has not responded to any of Plaintiff's attempts to make contact. On October 27, 2021, Plaintiff moved for leave to serve Defendant by alternative means. Plaintiff requests leave to serve Defendant by email to its domestic counsel Li Yang, or, in the alternative, leave to serve Defendant directly by email to VAVOFO's customer support email address. (ECF No. 7, PageID #87, 90.)

## ANALYSIS

The United States and China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638. *Noco Company v. Liu Chang*, No. 1:18-cv-2561, 2019 WL 2135665, at * 2 (N.D. Ohio May 15, 2019). The Hague Convention is a multilateral treaty designed to supply a simple way to serve process abroad, assure that foreign defendants receive actual and timely notice of suit, and facilitate proof of service. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Article 1 of the Convention defines its scope: "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. at 362. The Supreme Court holds that this "language is mandatory" and that compliance with the Hague Convention is required "in all cases in which it applies." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699. However, the Convention does not apply where the address of the person to be served is unknown. 20 U.S.T. at 362.

"The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 698. Article 10 also

establishes alternative, less formal service methods, such as direct service by "postal channels." 20 U.S.T. 363–64. China has objected to most of these alternative methods of service, including service by postal channels. *Liu Chang*, 2019 WL 2135665, at * 2. As a result, for service in China, the Hague Convention primarily authorizes service through China's central authority—the Ministry of Justice—that arranges for service according to domestic law. *Id*.

The Federal Rules of Civil Procedure specifically contemplate service through the Hague Convention. Rule 4(h)(2), which governs service of process on foreign businesses, authorizes service in any manner prescribed by Rule 4(f), the rule governing service of process of foreign individuals." Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides three methods for service. Relevant here, Rule 4(f)(1) allows for service by "any internationally agreed means . . . that is reasonably calculated to give notice," such as those the Hague Convention authorizes. Fed. R. Civ. P. 4(f)(1). Rule 4(f)(3) permits service by "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Courts consistently recognize that there is not a hierarchy among the subsections of Rule 4(f). *See Lexmark Int'l., Inc. v. Ink Techs. Printer Supplies,* LLC, 295 F.R.D. 259, 260 (S.D. Ohio 2013) (collecting cases). However, while Rule 4 does not express a preference for service under a particular subsection, the Advisory Committee Notes to Rule 4 recognize the mandatory nature of using the methods of service contained in the Hague Convention when it applies:

> Paragraph (1) gives effect to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which entered into

4

>force for the United States on February 10, 1969. *See* 28 U.S.C.A., Fed. R. Civ. P. 4 (Supp. 1986). This Convention is an important means of dealing with problems of service in a foreign country. *See generally* 1 B. Ristau, International Judicial Assistance §§ 4-1-1 to 4-5-2 (1990). Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity*, 50 U. Pitt. L. Rev. 903 (1989). Therefore, this paragraph provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.

Fed. R. Civ. P. 4, advisory committee's note to 1993 amendments. Accordingly, under Rule 4, if the Hague Convention applies, a party must first attempt service by the means designated in the Convention. *Liu Chang*, 2019 WL 2135665, at *4–5. If the Hague Service Convention applies, and use of its procedures is mandatory, a court may authorize alternative service under Rule 4(f)(3) only in special circumstances, such as if the foreign nation refuses to serve a complaint or fails to serve it within six months. Fed. R. Civ. P. 4, advisory committee's note to 1993 amendments.

If the Hague Service Convention does not apply, and use of its procedures is not mandatory, a court may authorize service under Rule 4(f)(3) by any means not prohibited by international agreement, as long as the method comports with due process. *Studio A Ent., Inc. v. Active Distributors, Inc.*, No. 1:06CV2496, 2008 WL 162785, at *2–3 (N.D. Ohio Jan. 15, 2008). "The task of determining when the particularities and necessities of a given case require alternate service of process is 'placed squarely within the sound discretion of the district court.'" *Federal Trade*

*Comm'n v. Repair All PC*, No. 1:17 CV 869, 2017 WL 2362946, at *3 (N.D. Ohio May 31, 2017) (quoting *Studio A*, 2008 WL 162785 at *3).

Before exercising its discretion under Rule 4(f)(3), a court may require parties to show that they have "reasonably attempted to effectuate service on the defendant, and that the circumstances are such that the district court's intervention is necessary." *Id*. Further, even if the Hague Convention does not apply and "other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Midmark Corp. v. Janak Healthcare Private Ltd.*, No. 3:14-cv-088, 2014 WL 1764704, at *2 (S.D. Ohio May 1, 2014).

### I. Service on U.S. Counsel

Plaintiff first asks for leave under Rule 4(f)(3) to serve Defendant by email to its domestic counsel, Li Yang.

#### I.A. Compliance with the Hague Service Convention

"[T]he only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707. Where service on a defendant's domestic agent is valid and complete under State law and comports with due process, the Hague Convention does not apply. *Id*. In this case, email service to the attorney Mr. Yang would not involve transmittal abroad, so use of the procedures under the Hague Convention is not mandatory.

6

Although China has objected to alternative means of service in Article 10 of the Hague Convention, a signatory country's objection to Article 10 is specifically limited to the means of service enumerated there. *Repair All PC*, 2017 WL 2362946, at *4 (collecting cases). Courts frequently permit service through domestic counsel despite the foreign signatory's objection to Article 10. *Id*. Accordingly, the Court determines that service through domestic counsel on a Chinese business entity, as Plaintiff seeks here, is not prohibited by international agreement.

### I.B. Compliance with Due Process

Even if service by alternative means is appropriate under the Convention, service must still satisfy constitutional notions of due process, namely that the service of process be "reasonably calculated, under all the circumstances, to [apprise] interested parties of the pendency of the action and afford them an opportunity to present their objections." *Repair All PC*, 2017 WL 2362946, at *3 (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). On the facts presented, the Court is not satisfied that service on Defendant by email to Mr. Yang comports with due process.

In two of the cases Plaintiff cites in support of the proposition that service on domestic counsel for a foreign defendant satisfies due process, the domestic counsel represented the defendant in the matter. *See Repair All PC*, 2017 WL 2362946, at *5 (domestic counsel represented the defendant in the matter, filed a brief on the defendant's behalf, and participated in a teleconference and hearing before the court); *Terrestrial Comms LLC v. NEC Corp.*, No. 6-20-CV-00096-ADA, 2020 U.S. Dist.

LEXIS 110983, at *10 (W.D. Tex. June 24, 2020) (domestic counsel represented the defendant in contesting jurisdiction in the matter); *see also Dyer v. Can-Truck, Inc.*, No. 3:10 CV 1072, 2011 WL 2532871, at *2 (N.D. Ohio June 24, 2011) (email service on domestic counsel satisfied due process where counsel had received the email, had no difficulty communicating with the defendant, and continued to litigate on the defendant's behalf).

In *Wsou Investments LLC v. Oneplus Technology (Shenzhen) Co.*, No. 6-20-cv-00952, 2021 U.S. Dist. LEXIS 127056, at *3 (W.D. Tex. July 8, 2021), on which Plaintiff also relies, the court granted leave for email service on two attorneys who had previously represented the defendant but did not represent the defendant in that particular matter. However, the court also granted leave to serve process through personal delivery on the authorized agent for service at the defendant's domestic address. *Id.* Service on the attorneys and service on the authorized agent, together, satisfied due process. *Id.* at *13.

Here, Plaintiff argues that service on Mr. Yang is reasonably likely to apprise Defendant of this lawsuit because Mr. Yang is an attorney with whom Defendant has "a recent (if not current) relationship with respect to intellectual property matters." (ECF No. 7, PageID #90.) Plaintiff bases this assessment on public records showing that Mr. Yang is the attorney of record for one of VAVOFO's trademarks. (ECF No. 7-1, ¶¶ 11, 13–15, PageID #100.) But Mr. Yang advised Plaintiff that he "[is] not and will not be representing" Defendant in this matter. (*Id.*, ¶ 12, PageID #100.) Plaintiff cites no authority showing that service on *prior* domestic counsel alone, or

8

that service on current domestic counsel in other matters, satisfies due process. Accordingly, the Court cannot say that service on Mr. Yang is reasonably calculated to apprise Defendant of the complaint filed against it.

### I.C. Discretion

In any event, Plaintiff has not shown why the facts and circumstances of this case justify the Court's intervention. Plaintiff has made no showing that service under the Hague Convention has been tried and failed, would be unlikely to succeed, or is otherwise impracticable. Rather, Plaintiff argues that compliance with the Convention's procedures would result in delay because it would require translation of the summons and complaint into Chinese. ([ECF No. 7](), PageID #93.) Further, it can take up to one to two years to obtain proof of service from Chinese authorities. (*Id.*)

In support of its argument that a court should grant leave for alternative service to avoid the delay and expense associated with the Hague Convention, Plaintiff relies on *In re Oneplus Technology Co.*, No. 2021-165, 2021 U.S. App. LEXIS 27282 (Fed. Cir., Sept. 10, 2021). There, the district court authorized service on two domestic attorneys who had recently represented the defendant and on defendant's authorized agent for service, based solely on the cumbersome nature of service under the Hague Convention. *Wsou Invs. LLC v. Oneplus Tech. (Shenzhen) Co.*, Nos. 6:20-cv-00952, 6:20-cv-00953, 6:20-cv-00956, 6:20-cv-00957, and 6:20-cv-00958, 2021 U.S. Dist. LEXIS 127056, at *10–11 (W.D. Tex. July 8, 2021). The defendant petitioned for a writ of mandamus to compel dismissal of the action for insufficient service of

9

process on the ground that the district court abused its discretion by authorizing alternative service. *In re Oneplus Tech. Co.*, 2021 U.S. App. LEXIS 27282, at *8.

On review, the Federal Circuit declined to find a clear abuse of discretion justifying the issuance of a writ of mandamus. *Id.* at *11. However, the court expressed concerns about the district court's authorization of alternative means of service based solely on the fact that service under the Convention is more "cumbersome" than other means, noting that courts typically invoke Rule 4(f)(3) only where "special circumstances" justify departure from more conventional means of service. *Id.* at *9–10. The court explained that, while Rule(f)(3) stands on "equal footing" with Rule 4(f)'s other subsections, Rule 4(f)(3) was not meant to displace the other rules for service whenever alternative means are seen as more convenient. *Id.* at *9.

Plaintiff acknowledges that the Court need not grant alternative service in every case in which conventional means of service would be "merely inconvenient," but asserts that the "special type of circumstances" that warrant service by alternative means exist in this matter. (ECF No. 7, PageID #94.) However, Plaintiff has not identified any special circumstances warranting relief in this case beyond the delay and expense of complying with the procedures of the Hague Convention. Accordingly, the Court declines to grant leave for service by email to Mr. Yang.

**II.    Service by Email**

In the alternative, Plaintiff seeks leave to serve Defendant by email at VAVOFO's customer support email. (ECF No. 7, PageID #90.) As discussed, in all

matters where documents must be transmitted abroad to effect service, the use of Hague Convention procedures is mandatory. *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707. Plaintiff does not dispute that direct service on Defendant over email requires the transmission of a judicial document abroad.

As an initial matter, Plaintiff questions the accuracy of Defendant's Nanshan address, to which Plaintiff successfully mailed a waiver package. (ECF No. 7, PageID #94.) If the address of the entity to be served is unknown, the use of Hague Convention procedures is not mandatory. 20 U.S.T. at 362. However, to the extent Plaintiff argues that Defendant's address is unknown, the Court disagrees. To the contrary, Plaintiff obtained a physical address for Defendant's location in the Nanshan district from VAVOFO's website. (ECF No. 7-1, ¶ 6, PageID #98.) Plaintiff mailed a waiver package to this address via FedEx and that package was successfully delivered. (*Id.*)

Even so, Plaintiff argues that it is "unclear whether that address is accurate and whether the package ultimately reached Defendant" because the address differs from other addresses Plaintiff obtained for Defendant. (ECF No. 7, PageID #94.) Plaintiff obtained two addresses located in the Longhua district from Defendant's USPTO trademark and patent filings. (ECF No. 7-1, ¶¶ 4,5, PageID #97–98.) These addresses are similar to the address Defendant lists as its Shenzhen headquarters on VAVOFO's website, also in the Longhua district. (ECF No. 7-1, ¶ 6, PageID #98.) Standing alone, however, the mere fact that the address located in the Nanshan district is different from the addresses Defendant listed on USPTO filings and

11

elsewhere on VAVOFO's website does not demonstrate that the Nanshan address is inaccurate. Moreover, the fact that Plaintiff did not receive a response to its waiver materials is insufficient evidence that the physical address is inaccurate. Plaintiff avers that sixty days have passed since the waiver package was delivered to the Nanshan address. (ECF No. 7-1, ¶ 7, PageID #99.) But while Rule 4(d) provides sixty days to return a waiver from a foreign country, requesting the waiver creates no obligation on the foreign defendant to do so. *Liu Chang*, 2019 WL 2135665, at *4.

Accordingly, the Court finds that Plaintiff has not demonstrated that Defendant's physical address is unknown or that another exception to the Hague Convention applies. Plaintiff argues that the Court may authorize service by email under Rule 4(f)(3), without Plaintiff first attempting service through the Convention, because service by email is not prohibited by international agreement or notions of due process, complying with Convention procedures would cause delay and expense, and Plaintiff has already made reasonable attempts to serve Defendant. (ECF No. 7, PageID #90, 93–95.) These arguments are unavailing. In this case, following the means of service specified by the Hague Convention is mandatory. Because Plaintiff has not yet attempted service through the Convention under Rule 4(f)(1), there is no need to resort to other service methods under Rule 4(f)(3).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** without prejudice Plaintiff's motion to serve Defendant by alternative means. Plaintiff must proceed with service of Defendant through China's Central Authority pursuant to the Hague Convention.

**SO ORDERED.**

Dated:  November 29, 2021

                                        J. Philip Calabrese
                                        United States District Judge
                                        Northern District of Ohio